COMMUNITY BANK, PETITIONER *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 942–80.    Filed November 9, 1982.

*Thomas G. Bost,* for the petitioner.
*William K. Shipley,* for the respondent.

OPINION

TANNENWALD, *Chief Judge*: This case was reassigned to Special Trial Judge John J. Pajak for consideration and ruling

on petitioner's motion for summary judgment.* After a review of the record, we agree with and adopt his opinion which is set forth below.

### OPINION OF THE SPECIAL TRIAL JUDGE

PAJAK, *Special Trial Judge*: Petitioner is a commercial bank with its principal office located in Huntington Park, Calif. During the taxable years in question, petitioner purchased four properties on which it held mortgages at nonjudicial foreclosure sales. In each case, the sale was conducted in full accordance with California law. Petitioner determined the fair market value of these properties to be the bid price on two of the properties and the bid price plus prior liens on the other two properties. Petitioner reported no gain on these foreclosure purchases.

Respondent determined deficiencies for the years 1975 and 1976 in the amounts of $448,384 and $4,381, respectively. The deficiencies are based on respondent's determination that the fair market value of each of the four properties purchased by petitioner exceeded the amount of the obligations of the debtor which were applied to the adjusted bid price of each property. Respondent also made corresponding charitable contribution adjustments. The issues for decision in the underlying case are whether petitioner realized gains on the foreclosure purchases of the properties and, if so, whether such gains are taxable as ordinary income or long-term capital gains.

The issue for decision on petitioner's motion for summary judgment is whether, for purposes of determining gain or loss under section 1.166–6, Income Tax Regs., the presumption in the regulation that fair market value is equal to the bid price may be rebutted by clear and convincing evidence, even if under State law such price is determinative.

Section 1.166–6, Income Tax Regs.,[1] (hereinafter referred to

---

*Petitioner's motion for summary judgment was heard by Special Trial Judge Francis J. Cantrel at a motions session of the Court held in Washington, D.C. Arguments were presented by counsel for both parties and a transcript was made of the proceedings. Subsequently, by order of the Chief Judge, petitioner's motion was reassigned to Special Trial Judge John J. Pajak for consideration and ruling thereon.

[1]The relevant provisions of sec. 1.166–6 are set forth in full as follows:

as section 1.166–6 or as the regulation) provides in pertinent part as follows:

> If mortgaged or pledged property is lawfully sold (whether to the creditor or another purchaser) for less than the amount of the debt, and * * * the creditor buys in the mortgaged or pledged property, loss or gain is also realized, measured by the difference between the amount of those obligations of the debtor which are applied to the purchase or bid price of the property * * * and the fair market value of the property. * * * The fair market value of the property for this purpose shall, in the absence of clear and convincing proof to the contrary, be presumed to be the amount for which it is bid in by the taxpayer.

Section 1.166–6 has existed in substantially the same form for over 50 years,[2] and this Court and others have held that the regulation has the effect of law. *Community Bank v. Commissioner*, 62 T.C. 503 (1974); *Nichols v. Commissioner*, 1 T.C. 328 (1942), revd. on other grounds 141 F.2d 870 (6th Cir. 1944); *Hadley Falls Trust Co. v. United States*, 110 F.2d 887 (1st Cir. 1940).

*Community Bank v. Commissioner, supra,* concerned an earlier instance where respondent sought to attribute income from foreclosure sales transactions to the very petitioner now before us. In *Community Bank*, the Court carefully explained the Federal income tax consequences of a foreclosure sale transaction due to the provisions of section 1.166–6 and stated that the regulation provides that the mortgagee realizes gain or loss measured by the difference between the amount of the

---

Sec. 1.166–6. Sale of mortgaged or pledged property.

(a) *Deficiency deductible as bad debt*—(1) *Principal amount.* If mortgaged or pledged property is lawfully sold (whether to the creditor or another purchaser) for less than the amount of the debt, and the portion of the indebtedness remaining unsatisfied after the sale is wholly or partially uncollectible, the mortgagee or pledgee may deduct such amount under section 166(a) (to the extent that it constitutes capital or represents an item the income from which has been returned by him) as a bad debt for the taxable year in which it becomes wholly worthless or is charged off as partially worthless. See sec. 1.166–3.

* * * * * * *

(b) *Realization of gain or loss*—(1) *Determination of amount.* If, in the case of a sale described in paragraph (a) of this section, the creditor buys in the mortgaged or pledged property, loss or gain is also realized, measured by the difference between the amount of those obligations of the debtor which are applied to the purchase or bid price of the property (to the extent that such obligations constitute capital or represent an item the income from which has been returned by the creditor) and the fair market value of the property.

(2) *Fair market value defined.* The fair market value of the property for this purpose shall, in the absence of clear and convincing proof to the contrary, be presumed to be the amount for which it is bid in by the taxpayer.

[2]See art. 153, Regs. 69, Revenue Act of 1926.

mortgage obligation applied to the bid price and the fair market value of the property, that for this purpose, the fair market value is presumed to be equal to the bid price "absent clear and convincing proof to the contrary," and that where respondent seeks to attribute income to petitioner, the presumption in the regulation cannot be disregarded by respondent without producing evidence to indicate the bid price is not representative of the fair market value. In other words, the Court held that section 1.166–6 permits an inquiry into the "true" fair market value of the foreclosed property and referred to *Heath v. Commissioner*, T.C. Memo. 1971–129, as a case where respondent presented clear and convincing proof that the fair market value was greater than the bid price. *Community Bank v. Commissioner, supra* at 506–508.

In an attempt to avoid the plain meaning of the regulation and the *Community Bank* opinion, petitioner argues that the sale was made in full conformity with California law, and asserts that under California law, as interpreted by petitioner, the bid price is determinative as to fair market value.[3] The fact that the sales were lawful does not negate the requirements of the regulation. A basic premise of section 1.166–6 is that it pertains to mortgaged property "lawfully sold" tó the creditor. It thus appears that petitioner would not be entitled to the benefit of the bid price presumption in the regulation if the sales were not lawful under California law.

In cases of lawful foreclosure sales, section 1.166–6 requires that for Federal tax purposes the true fair market value is to be determined where respondent attributes income to petitioner. *Community Bank v. Commissioner, supra*. There is nothing in this regulation which by express language or necessary implication makes its operation depend upon State law. Since the regulation has the force of law, it should be interpreted to give a uniform application to a nationwide system of taxation. *Lyeth v. Hoey*, 305 U.S. 188, 194 (1938).[4]

Petitioner's interpretation of section 1.166–6(b)(2) obviously

---

[3]In light of our holding in this case, we find it unnecessary to address the question of whether petitioner has correctly interpreted California law.

[4]Petitioner also relies upon *Helvering v. Midland Ins. Co.*, 300 U.S. 216 (1937). Since *Midland* involved the question of accrued interest, an issue not before us, we find that its holding is not applicable in this case. Moreover, it has long been held that *Midland* does not

would not lead to a uniform scheme of taxation. Instead, taxation would turn upon the foreclosure laws of the 50 States and the District of Columbia. This is clearly not the result contemplated by the regulation. We are compelled to conclude that the presumption created by section 1.166–6(b)(2) is rebuttable by clear and convincing evidence, regardless of any contrary provisions of a particular State law. Any other interpretation would obviate the plain language of the regulation.

We conclude that genuine issues of material fact remain in that the fair market value of the properties in question must be determined for Federal tax purposes and that a decision cannot be rendered as a matter of law. Thus the requirements for a summary adjudication under Rule 121(b) of the Tax Court Rules of Practice and Procedure have not been met. Accordingly, an order denying petitioner's motion for summary judgment must be entered.

*An appropriate order will be issued.*

---

preclude inquiry as to the fair market value of the property foreclosed. *Nichols v. Commissioner*, 1 T.C. 328 (1942), revd. on other grounds 141 F.2d 870 (6th Cir. 1944): *Hadley Falls Trust Co. v. United States*, 110 F.2d 887 (1st Cir. 1940).